FILED IN OPEN COURT

10/19/2016

CLERK. U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 3:16-CR-137-J-39JRK

MARCELENE M. KEESBURY,
    a/k/a Marcy Keesbury,

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, MARCELENE M. KEESBURY, and the attorney for the defendant, Patrick G. Murphy, mutually agree as follows:

## A.    Particularized Terms

### 1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371.

### 2.    Maximum Penalties

Count One carries a maximum sentence of five (5) years imprisonment, a fine of $250,000 or twice the gross pecuniary gain or twice the pecuniary loss occasioned by the offense, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals, and $400 per felony count for persons other than individuals, such as

Defendant's Initials M\L                           AF Approval BB

corporations. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>: That two or more persons, in some way or manner, agreed to try to accomplish a shared and unlawful plan to commit wire fraud, as charged in the Information;

<u>Second</u>: the Defendant knew the unlawful purpose of the plan and willfully joined in it;

<u>Third</u>: during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Information; and

<u>Fourth</u>: the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

4. <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with

Defendant's Initials _MK_          2

committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement.

6.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. 3663A(a) and (b), defendant agrees to make full restitution to The Wholesale House.

7.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility

Defendant's Initials _M\C_                3

rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of

Defendant's Initials _M\L_                 4

sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this

Defendant's Initials _MК_                    5

agreement, or should the defendant falsely implicate or incriminate any person, or

should the defendant fail to voluntarily and unreservedly disclose and provide full,

complete, truthful, and honest knowledge, information, and cooperation regarding

any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or

false declarations, if any, committed while testifying pursuant to this agreement, or

for obstruction of justice.

(2)     The United States may prosecute the defendant for the

charges which are to be dismissed pursuant to this agreement, if any, and may

either seek reinstatement of or refile such charges and prosecute the defendant

thereon in the event such charges have been dismissed pursuant to this

agreement.  With regard to such charges, if any, which have been dismissed, the

defendant, being fully aware of the nature of all such charges now pending in the

instant case, and being further aware of defendant's rights, as to all felony charges

pending in such cases (those offenses punishable by imprisonment for a term of

over one year), to not be held to answer to said felony charges unless on a

presentment or indictment of a grand jury, and further being aware that all such

felony charges in the instant case have heretofore properly been returned by the

indictment of a grand jury, does hereby agree to reinstatement of such charges by

recision of any order dismissing them or, alternatively, does hereby waive, in open

court, prosecution by indictment and consents that the United States may proceed

by information instead of by indictment with regard to any felony charges which

may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

11.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), together with 28 U.S.C. § 2461(c), whether in

Defendant's Initials ᴍᴵᶜ                    7

the possession or control of the United States or in the possession or control of the
defendant or defendant's nominees.  The assets to be forfeited specifically include,
but are not limited to, the following: a money judgment in the amount of
$3,721,396.40, which represents $4,785,600.03 the defendant obtained in
proceeds from the conspiracy, minus $1,064,204.53 which the defendant and co-
conspirator Charles M. French jointly paid directly to the victims of the scheme, as
well as the following property, which is directly traceable to proceeds of the wire
fraud charged in Count One:

> a.  a 2010 Cadillac CTS, VIN 1G6DG5EG8A0134579,
>     registered in the name of Marcelene M. Keesbury.

The defendant consents to the filing of a motion by the United States
for immediate entry of a Preliminary Order of Forfeiture as to the vehicle.  The net
proceeds of the forfeiture of the vehicle will be credited to the forfeiture money
judgment.

The defendant agrees and consents to the forfeiture of these assets
pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The
defendant further consents to the filing of a motion by the United States for entry of
a Forfeiture Money Judgment and a motion for immediate entry of a Preliminary
Order of Forfeiture as to the vehicle.

The defendant also hereby agrees to waive all constitutional,
statutory and procedural challenges in any manner (including direct appeal,
habeas corpus, or any other means) to any forfeiture carried out in accordance
with this Plea Agreement on any grounds, including that the forfeiture described

Defendant's Initials  M\C                    8

herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this Plea Agreement, the Court make a determination that the government has established the requisite nexus between the seized funds subject to forfeiture and the offense to which the defendant is pleading, and enter a preliminary order of forfeiture. In addition, pursuant to the provisions of Rule 32.2(b)(1)(A), the United States and the defendant request that, at or before sentencing, the Court make a determination that the amount of proceeds of the offense to which the defendant is pleading guilty is $4,785,600.93 and enter an order of forfeiture, which in this case is a money judgment in the amount of $3,721,396.40 as described above. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture, including all substitute assets, and to

Defendant's Initials _MIL_                              9

transfer custody of such property to the United States before the defendant's sentencing.  The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and U.S.S.G. § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of his cooperation.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment.  In addition, the defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement.  If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above.  The Court shall retain jurisdiction to settle any disputes arising from application of this clause.  The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

**B.**   **Standard Terms and Conditions**

1.   <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and

execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100.00 payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.     Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials  MC                    12

4.    Sentencing Information

        The United States reserves its right and obligation to report to the

Court and the United States Probation Office all information concerning the

background, character, and conduct of the defendant, to provide relevant factual

information, including the totality of the defendant's criminal activities, if any, not

limited to the count(s) to which defendant pleads, to respond to comments made

by the defendant or defendant's counsel, and to correct any misstatements or

inaccuracies.  The United States further reserves its right to make any

recommendations it deems appropriate regarding the disposition of this case,

subject to any limitations set forth herein, if any.

5.    Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.

32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States

Attorney's Office within 30 days of execution of this agreement an affidavit

reflecting the defendant's financial condition.  The defendant promises that her

financial statement and disclosures will be complete, accurate and truthful and will

include all assets in which she has any interest or over which the defendant

exercises control, directly or indirectly, including those held by a spouse,

dependent, nominee or other third party.  The defendant further agrees to execute

any documents requested by the United States needed to obtain from any third

parties any records of assets owned by the defendant, directly or through a

nominee, and, by the execution of this Plea Agreement, consents to the release of

Defendant's Initials _MIL_                13

the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

     6.    <u>Sentencing Recommendations</u>

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to

Defendant's Initials ___M\L___      14

withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.     Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring

defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty,

Defendant's Initials _____ MK                    16

defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _MVL_                    17

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant and

that defendant fully understands its terms.

DATED this __19th__ day of October, 2016.

A. LEE BENTLEY, III
United States Attorney

MARCELENE M. KEESBURY
Defendant

MARK B. DEVEREAUX
Assistant United States Attorney

PATRICK G. MURPHY
Attorney for Defendant

MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials _M )_                18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                   CASE NO. 3:16-CR-137-J-39JRK

MARCELENE M. KEESBURY,
    a/k/a Marcy Keesbury,

PERSONALIZATION OF ELEMENTS

1.      Do you admit that from approximately the second half of 2010 and
continuing thereafter through in or about March, 2014, in Jacksonville and St.
Johns County within the Middle District of Florida, and elsewhere, that two or more
persons, in some way or manner, agreed to try to accomplish a common and
unlawful plan to commit wire fraud, as charged in the Information?

2.      Do you admit you knew the unlawful purpose of the plan and willfully joined
in it?

3.      Do you admit that during the conspiracy, one of the conspirators knowingly
engaged in at least one overt act as described in the Information, that is, on or
about December 4, 2012 a coconspirator caused an electronic funds transfer from
a BB&T Bank in Ponte Vedra Beach, Florida in the amount of $51,000 to be
transferred to your bank account at JP Morgan Chase in Ft. Wayne, Indiana, which
represented a portion of the fraud proceeds from the conspiracy?

Defendant's Initials __M\L__          19

4.      Do you admit that the overt act was committed at or about the time alleged
and with the purpose of carrying out or accomplishing some object of the
conspiracy?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:16-CR-137-J-39JRK

MARCELENE M. KEESBURY,
   a/k/a Marcy Keesbury,

## FACTUAL BASIS

### BACKGROUND

This conspiracy concerned a white collar fraud scheme which operated for almost four years.  The scheme participants were "insiders," that is, employees of the victim company, who all held executive level positions within the company. These conspirators defrauded their employer, The Wholesale House, resulting in a direct financial loss to the company of approximately $4.8 million, along with the good-will of the company, which significantly impacted future business.  These three conspirators were only able to carry out their scheme based upon their senior level positons within the victim company.  The conspirators were: (1) the former President of the Wholesale House, Marcelene Keesbury (a/k/a Marcy Keesbury); (2) the former Vice-President of the Wholesale House, Charles M. French (a/k/a Mick French; and the former Director of Information Technology (IT) for the Wholesale House, Justin Pennington.

The Wholesale House is a closely held company headquartered in Hicksville, Ohio, with approximately sixty-three employees.  The Wholesale House

Defendant's Initials _MML_                    21

maintained a warehouse in Jacksonville and is owned by two shareholders who live in Ponte Vedra, Florida. The Wholesale House is a business that sells consumer electronics nationwide to both "brick and mortar stores," as well as internet based stores, including Amazon. The business has been operating for approximately thirty years.

### THE SCHEME and the CONSPIRATORS

The scheme in this fraud operated as follows. Pennington, Keesbury, and French would secretly incorporate a company (3 Kings), unbeknownst to the owners of The Wholesale House and its employees. The conspirators operated an internet business in direct competition with the business customers of The Wholesale House. Keesbury (President) and French (Vice-President) would enable 3 Kings to make purchases from The Wholesale House at significant price discounts. These discounts were substantial, and they were many times, far greater than the discounts given to long-time established customers of The Wholesale House. When 3 Kings advertised their items for sale on the internet, they were in direct competition with The Wholesale House's customer base. Due to the fact that 3 Kings was able to purchase the merchandise cheaper than their competitors, the long-time customer base for The Wholesale House began losing significant sales to 3 Kings.

The business end of 3 Kings was primarily operated by Pennington, the conspirator with the most computer knowledge. The two other conspirators, Keesbury and French, had greater responsibilities in keeping the victim company,

Defendant's Initials  ᐧᐧᐧ          22

The Wholesale House, operating and enabling 3 Kings to remain a customer of The Wholesale House. Keesbury's and French's primary conspiratorial responsibilities were enabling 3 Kings to purchase merchandise from The Wholesale House at discounted prices so they could under-cut their competitors.

In the normal course of business, in order to deal with cash flow issues, The Wholesale House maintained a line-of-credit at a bank in Ohio. This line-of-credit was necessary for The Wholesale House to purchase and actually pay for the inventory they were selling to their retail and wholesale customers. As The Wholesale House's customers received payment for their sale of the product, the customer would pay their accounts payable (accounts receivable for The Wholesale House). At the beginning of the conspiracy, the line-of-credit for The Wholesale House was approximately $525,000.

Shortly after 3 Kings entered into direct competition with The Wholesale House's long-time customers, several customers began attempting to identify exactly who was behind this new company, 3 Kings, and even more importantly, how was 3 Kings able to undercut the long-time customers and sell the same merchandise at such low prices. During the conspiracy, there were occasions when 3 Kings would offer merchandise for sale on the internet at lower prices than The Wholesale House's competitors could even purchase the same items from The Wholesale House.

Based upon her position as President of The Wholesale House, Keesbury had the company's power of attorney via a corporate resolution. The POAs (one

Defendant's Initials  MJC                    23

from both of the owners) authorized Keesbury, as President of the victim company,

to enter into banking agreements on behalf of the company.  This included

increasing the corporation's line-of-credit.  During the conspiracy, although 3 Kings

paid the majority of their debt to The Wholesale House, many times, 3 Kings failed

to make complete and timely payments to The Wholesale House.  In order to

continue the conspiracy, Keesbury periodically increased the line-of-credit for The

Wholesale House by over $4 million.  By doing this, it permitted the conspirators to

conceal the fact that they we not timely paying their accounts payable to The

Wholesale House.  As will be explained below, this amount is approximately the

same amount of money that the conspirators took out of 3 Kings and paid to

themselves.  In addition to increasing her employer's line-of-credit on several

occasions, Keesbury and French also concealed the ballooning debt owed by 3

Kings by falsely reflecting the debt as current.  This was accomplished by moving

the older debt from one account to a new 3 Kings account.  This action caused the

corporate books to reflect that the older debt had been paid and 3 Kings had

merely purchased additional product.  Had these artificial payments not been made

to the account receivable by the conspirators, the owners of The Wholesale

House, who did not know of the conspirator's ownership of 3 Kings, would have

seen the fact that 3 Kings was not timely paying their debt to The Wholesale

House and the fact that 3 Kings' accounts payable was growing into the millions of

dollars.  Had the conspirators' relationship to 3 Kings been known by the owners of

The Wholesale House or had the owners been aware of the mounting debt owed

Defendant's Initials  M|L                    24

by 3 Kings, the owners would have stopped sales to 3 Kings and taken other actions.

During the conspiracy, the conspirators actively concealed their ownership and operation of 3 Kings.  The conspirators knew that if the owners were aware that their executive management was in direct competition with the many long-term customers of The Wholesale House, the owners would have taken action to end the conspiracy.   In concealing their ownership of 3 Kings, Pennington assumed the persona of "David Anderson."  Pennington used this name, David Anderson, in email communications to accounting personnel for The Wholesale House and in advertisements to the public.  In fact, in several emails between "David Anderson" and employees with The Wholesale House, Pennington included his true name and email address as a recipient of the email correspondence.  In other words, Pennington was sending emails to himself as "David Anderson" in order to further conceal his relationship to 3 Kings.

In the spring of 2012, Pennington moved from Indiana and bought a home in St. Johns County.  At that time, Pennington became a contract employee of The Wholesale House.  On September 18, 2012, Pennington opened a bank account for 3 Kings at BB&T in Jacksonville, Florida.  While Pennington was in Ohio, 3 Kings had a bank account which was used to wire transfer funds to each of the conspirators.

Defendant's Initials  M\L                25

## THE SCHEME IS IDENTIFIED

In 2013, one of the owners questioned French about 3 Kings. This owner had seen that the accounts receivable from 3 Kings was substantial and wanted to make sure that 3 Kings was financially able to pay the debt to The Wholesale House. In response to the owner's inquiry, French provided a sham balance sheet for 3 Kings. Additionally, in response to a direct question from the owner as to whether he (French) had ever personally met the alleged manager of 3 Kings, a David Anderson, French said that he had personally met David Anderson one time. Both of these actions, that is, providing a sham balance sheet and lying about meeting David Anderson, supported the conspiracy in defrauding The Wholesale House.

In March of 2014, following further inquiry by the owners regarding 3 Kings, all three of the conspirators voluntarily met at the owners' home in Ponte Vedra, Florida. During that meeting, all three conspirators made incriminating statements regarding their participation in the fraudulent scheme. Admissions were made to both of the owners of The Wholesale House and to a former Special Agent of the Federal Bureau of Investigation (FBI) who was present at the request of the owners. Regarding their involvement in the scheme, each of the conspirators agreed that their motive was greed, despite the fact that each of the conspirators were receiving generous salaries. Additionally, on a later occasion, Keesbury and French made extensive admissions to another individual, who was a retired FBI

Defendant's Initials __M̅ʅ̅ᴗ__          26

Special Agent.  Further, both Keesbury and French signed written admissions regarding their participation in the fraudulent scheme.

During the conspiracy, the following disbursements were made equally to each of the three conspirators:

| Month/Year | Amount |
| --- | --- |
| 4/2011 | $4,000 |
| 5/2011 | $5,000 |
| 6/2011 | $5,000 |
| 7/2011 | $7,765.52 |
| 8/2011 | $9,809.06 |
| 9/2011 | $4,902.44 |
| 10/2011 | $8,250 |
| 11/2011 | $8000 |
| 12/2011 | $6,250 |
| | **$58,977.02 – 2011** |
| 1/2012 | $20,500 |
| 2/2012 | $18,000 |
| 3/2012 | $46,000 |
| 4/2012 | $53,000 |
| 5/2012 | $51,000 |
| 6/2012 | $44,000 |
| 7/2012 | $38,500 |
| 8/2012 | $36,500 |
| 9/2012 | $41,000 |
| 10/2012 | $35,500 |
| 11/2012 | $36,000 |

Defendant's Initials  M J C

| | |
|---|---|
| 12/2012 | $51,000 |

**$471,000 – 2012**

| Month/Year | Amount |
|---|---|
| 1/2013 | $48,000 |
| 2/2013 | $41,000 |
| 3/2013 | $81,500 |
| 4/2013 | $86,000 |
| 5/2013 | $73,500 |
| 6/2013 | $62,000 |
| 7/2013 | $56,000 |
| 8/2013 | $48,500 |
| 9/2013 | $47,500 |
| 10/2013 | $50,500 |
| 11/2013 | $49,000 |

**$643,000 – 2013**

**$1,173,477.02 – To Each Conspirator**

The fraud proceeds were under the control of Pennington.  On the majority of occasions that he dispersed proceeds to his fellow conspirators, Pennington caused interstate electronic funds transfers to be made from the greater Jacksonville, Floirda, area to bank accounts held by Keesbury and French located in Ohio.

In addition to these proceeds disbursements, Pennington withdrew additional funds from 3 Kings.  In the end, each conspirator received $1,058,028.00.  By Pennington withdrawing additional funds than that set forth

above, Pennington received a total of approximately $2,231,505.02 for his role in the scheme.

Following their confessions, Keesbury and French have made substantial payments in restitution to The Wholesale House.  Thus far, Pennington has not made any payments in restitution.

Defendant's Initials ___ M L          29